IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**SAMUEL CRUZ,**

**Plaintiff,**

v.                                                    CIVIL NO. 13-1308 (PAD)

**CHUCK HAGEL,**

**Defendant.**

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Samuel Cruz initiated this action against the Secretary of Defense, Chuck Hagel, seeking redress for alleged discrimination because of his sex, in violation of Title VII, 42 U.S.C. § 2000e et seq. (Docket No. 13). Before the court is defendant's "Motion for Summary Judgment" (Docket No. 41), which plaintiff opposed (Docket No. 48). Defendants replied (Docket No. 53) and plaintiff surreplied (Docket No. 57). Upon careful consideration of the parties' submissions and applicable law, defendant's request is GRANTED and the case DISMISSED.[1]

**I.     BACKGROUND**

Plaintiff has been a substitute teacher at Antilles Elementary and Middle Schools in Fort Buchanan, Puerto Rico, since 1995. Id. at ¶ 15. Beginning in 1997, he has applied for a full permanent teacher position at the schools, to no avail. Id. at ¶ 19. In his view, all of the positions he has applied for were or are being filled with female teachers because there is "an unwritten policy at Antilles kindergarten and elementary School in Forth Buchanan not to hire males as

---

[1] Two (2) days before filing his opposition, plaintiff moved to strike three (3) exhibits in support of defendant's motion for summary judgment - Exhibit Nos. 7, 9 and 15 - for failure to authenticate (Docket No. 44). For the reasons explained below, plaintiff's request is DENIED.

classroom teachers." Id. at ¶¶ 20-21.  On that basis, he filed a formal complaint before the Diversity Management and Equal Opportunity Office ("EOO"), claiming discrimination based on sex. Administrative remedies were exhausted, and this suit followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial.  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  It is "material" if it potentially affects the outcome of the case in light of applicable law.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the nonmoving party's case.  Celotex Corp., 477 U.S. at 325; Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting facts that demonstrate a genuine issue of material fact for trial.  LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought.  Shafmaster v. U.S., 707 F.3d. 130, 135 (1st Cir. 2013).

To resist summary judgment, the nonmovant must do more than show some metaphysical doubt as to a material fact. Matsushita Elec. Inds. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported motion for summary judgment. Nieves-Romero v. U.S., 715 F.3d 375, 378 (1st Cir. 2013). Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows. Based on those facts, defendant is entitled to judgment as a matter of law.

### III.  FINDINGS OF FACT[2]

**A.  The Department of Defense Domestic Dependent Elementary and Secondary Schools**

The Department of Defense operates two (2) statutorily distinct elementary and secondary school systems for children of military personnel: domestic schools (i.e., Domestic Dependent Elementary and Secondary Schools ("DDESS")); and overseas schools (i.e., Department of Defense Dependents' Schools ("DoDDS")). Defendant's "Statement of Material Uncontested Facts in Support of Motion for Summary Judgment" ("SUMF"), Docket No. 42-2 at ¶ 1. Both DoDDS and DDESS are organizational elements of the Department of Defense Education Activity (DoDEA), located in Alexandria, VA. SUMF at ¶ 2.

DDESS has one Area Service Center ("ASC"), headquartered in Peachtree City, Georgia. Id. DDESS is charged with providing elementary and secondary education to eligible dependents of military members and certain Federal civilian employees who reside on military installations in the continental United States, and military members and Federal civilian employees assigned to and working in Puerto Rico and Guam. SUMF at ¶ 3. It is organized into six (6) school districts,

---

[2] The record confirms that the parties agree on most of the facts. More specifically, out of the 41 proposed statements of uncontested facts, 36 were admitted by plaintiff. That is, SUMF ¶¶ 1-12, 15, and 17-39. See, Docket No. 47.

based on the number and size of the schools at each military installation and the geographic location of the installation. SUMF at ¶ 4.

The relevant district is comprised of DDESS schools located at the United States Military Academy, West Point, New York; Marine Corps Base Quantico, Virginia; Naval Surface Warfare Center Dahlgren, Virginia; Fort Buchanan Army Installation, Puerto Rico; and Coast Guard Air Station Borinquen, Puerto Rico. Id. Fort Buchanan currently has three (3) schools comprised of one elementary school (Antilles Elementary School), one middle school (Antilles Middle School), and one high school (Antilles High School). SUMF at ¶ 5. Since 1997, plaintiff has been a Substitute Teacher at Antilles Elementary and Middle Schools. SUMF at ¶ 7.

B. The Employment Application System

From 2009, plaintiff has had an active online application for a position as elementary school teacher at Antilles Elementary and Middle Schools, which he prepared and submitted using the DDESS Employment Application System ("EAS"). SUMF at ¶ 8.[3] The EAS is accessed online through the DoDEA website, and serves all schools in DoDEA. SUMF at ¶ 9.

The applicant may select the regions he wants to submit applications for. Id. The application consists of several modules which the applicant completes by providing information on a number of topics such as personal data, work experience, education and professional backgrounds, including evaluations, if any. Also, applicants may submit copies of their teaching credentials and transcripts, along with any other information they deem necessary. Id.

---

[3] Plaintiff submitted a clarification (Docket No. 47 at ¶ 8) which at the end of the day does not contest this fact. It only serves to add that before using EAS, plaintiff applied for a full time teaching job, and that his electronic application has been lost every year since 2009. He failed to adequately support the clarification by a record citation as required by Local Rule 56(e). The portion of plaintiff's deposition he refers to does not support what he has proposed.

Once the EAS application is submitted, a certification unit over at DDESS headquarters conducts a teacher licensure (e.g. application of rating criteria). SUMF at ¶ 10. To that end, the unit reviews the applicant's transcripts and the target position the applicant is interested in, and if there is something missing it so informs the applicant. Id.

Once the application is complete, it can be updated, changed or deleted by the applicant, who is the only one with access and authorization to edit the application. The licensure staff may access the application to make annotations about the qualifications, which the applicant sees. SUMF at ¶ 11.

When a vacancy arises, the school principal submits a request for a personnel action ("RPA"), based on classroom needs. The RPA is received by the HR division at the ASC in Peach Tree City, Georgia, as the division responsible for preparing the referral and selection lists for all vacant educator positions in DDESS. SUMF at ¶¶ 6 and 12.[4]

In that process, the candidate's online application, supporting documentation, and the applicant's responses to the online questions/dropdown menus are matched with objective criteria. The menus are designed to capture the desired competencies/knowledge, skills, and abilities for the professional educator position being filled. SUMF at ¶ 13.[5] Once the system is queried for all

---

[4] It is uncontested that Maria Ortiz, a Supervisory Management Services Specialist ("SMSS") for the Puerto Rico School District, Fort Buchanan, did not have any participation in generating referral and selection lists, or in determining whose name made it to the list. SUMF at ¶ 30. Nor is it contested that Nancy Maldonado, the Principal of Antilles Middle School in Fort Buchanan during the relevant period, did not participate in the process of deciding who was placed on referral lists or that she was not informed why particular candidates were not included therein. SUMF at ¶ 31.

[5] Plaintiff argues that there can be no mention of an objective overview because a person that was not even part of the "referral list" for one of the job openings in 2010 to which he unsuccessfully applied, was selected for the position. And he calls into question the final stages of the process. This angle will be discussed as part of SUMF ¶ 15, not ¶ 13. In consequence, SUMF ¶ 13 is deemed admitted.

individuals who have expressed interest in the vacant position, it generates, on the basis of a score order, a list of available candidates.

After applying veterans and military spouses preference eligibilities, the HR staff at the ASC usually refers the top 25 candidates. SUMF at ¶ 14.  The referral determination is based on the candidate's response to the questions/dropdown menus, and is a measure of the degree to which the applicant's background matches the competencies, knowledge, skills and abilities contained in the objective criteria required of the professional educator position being filled. SUMF ¶ 15.[6]

Upon selection, a course work/academic evaluation is performed by the DoDEA Certification/Licensure Unit to ensure that the candidate selected will be able to obtain DoDEA certification. Id.[7]  Gender is not within the competencies/knowledge, skills and abilities the EAS applies in creating referral and selection lists. SUMF ¶ 16.[8]  Aside from submitting an RPA to the HR division at the ASC in Peachtree City, Georgia, the school principal, who serves as hiring official, has no participation in the process of generating those lists. SUMF ¶ 17.

The EAS works on a point-in-time basis. As such, new candidates can file on line applications for a particular position on a daily basis, while others can remove or modify them in a way that can alter how their qualifications match the desired competencies/knowledge, skills, and abilities for the position being filled. Hence, for a particular position, the system could provide a different list each time it is queried.  SUMF at ¶ 18.  The school principal has no authority to hire

---

[6] Plaintiff denied this fact, stating that his application has been lost every year since 2009. See, discussion at fn. 3. Thus, this fact is deemed admitted.

[7] Plaintiff admitted this fact, albeit questioning the objectivity of the system.  As a result, the fact is deemed admitted.

[8] Plaintiff alleges that sex can be identified as part of the information required in other sections of the application (i.e. a suffix from which the sex of the potential applicant may be inferred ("Mr. or Mrs.")).  He does not, however, contest it is not part of the criteria applied by the EAS.

candidates outside of those named in the referral list issued by the HR division at the ASC in Peachtree City, Georgia. Instead, she must choose the best available candidate within the referral list. SUMF at ¶ 32.

### C. July of 2010 Vacancy

On July 1, 2010, the DDESS HR office in Peachtree City, Georgia, issued a referral and selection list for a vacant, permanent, full time seasonal Fifth Grade Teacher position (Certificate # PR-DDESS EAS-ELEM2(T1)-External). The names of nineteen (19) eligible applicants (12 female and 7 male) were included in the list, but plaintiff's was not so included. SUMF at ¶ 19.[9] On July 15, 2010, Ms. Sandra López was selected for the position. SUMF at ¶ 20. At the moment of her selection, Ms. López had almost nine (9) years of experience as a full time classroom teacher. SUMF at ¶ 21.[10] Amy Saxon, an HR Specialist assigned to the HR division at the ASC in Peachtree City, Georgia, handled the referral process. SUMF at ¶ 33.

---

[9] Plaintiff contends that this list must be stricken because the person who authenticated the documents (Gordon Harmon, Supervisory Human Resources Specialist at DoDEA DDESS), testified under oath that referrals lists older than two (2) years are destroyed (Docket No. 44 at p. 1). Additionally, plaintiff claims that Maldonado made copies of those lists but shredded them when she retired. By extension, he argues that Harmon's authentication cannot be true if original referrals are destroyed after two (2) years. He also challenges the other two (2) lists submitted by defendant (one that relates to the August 2010 Opening and one in which plaintiff's name appeared on a referral list for a vacant teaching position in Antilles Middle School). But a careful review of the record confirms there is no inconsistency between Harmon's testimony and his signed certification of authenticity. First, while the selection case folders are destroyed every two (2) years, the selection lists that correspond to the 2010 vacancies where plaintiff claims he was overlooked because of his sex, were part of the evidentiary documents compiled and preserved by the EOO while investigating plaintiff's formal administrative complaint of discrimination, and were produced by plaintiff himself as part of his response to a Request for Production of Documents. When copies of those lists were shown to Harmon, he was able to authenticate them as documents kept in the course of the regularly conducted activities and practices of the DDESS, and prepared by persons who were acting under his control. The record confirms that plaintiff had those documents well before the litigation started in this case. And he never conducted discovery on the confection of the documents. Second, with respect to the referral list with plaintiff's name, the record confirms it was provided to plaintiff's counsel as part of discovery. Harmon explained during his deposition how the referral list was found amongst other documents that a Supervisory Management Service Specialist (Ortiz) kept on her own volition, in a personal file at the district office. At that time, plaintiff's counsel was informed that if he wished to depose Ortiz again regarding the document, defendant would not object, to which he responded "[w]e'll talk about that." He never did. All in all, there is no conflict with Harmon's deposition testimony and signed certification of authenticity. Therefore, plaintiff's request to strike those lists is DENIED.

[10] Plaintiff admitted this statement but insisted on his own qualifications (Docket No. 47 at ¶ 21). On that basis, the

### D. The August of 2010 Vacancy

On August 4, 2010, the DDESS HR office in Peachtree City, Georgia, issued a referral and selection list for a vacant, permanent, part-time seasonal Fifth Grade Teacher position (Certificate # PR-DDESS EAS-ELEM5(T1)-External. SUMF at ¶ 22. The list identified twenty-eight (28) eligible applicants (20 female and 8 male). Plaintiff, however, was not so identified. Id. On September 29, 2010, Ms. Barbara Dixon was selected for the position. SUMF at ¶ 24.[11] At that time, she had eight (8) years of experience as a full time classroom teacher. Id.

### E. The Administrative Complaint

On December 28, 2010, plaintiff filed a formal administrative complaint, alleging discrimination based on sex in not having been hired for the full time teaching positions. SUMF at ¶ 25. On February 2, 2011, Alina Doreste-Johnson, Chief, Diversity Management and Equal Opportunity, addressed a letter to him, informing plaintiff that the agency would investigate his claims of discrimination, specifying what issues were going to be subject of inquiry. SUMF at ¶ 26. In that regard, according to part "II" of the letter, the claims that were identified and accepted for processing were:

> (i) On August 10, 2010, Ms. Maria Ortiz, Supervisory Management Services Specialist (SMSS), Virginia/New York/Puerto Rico School District, Ft. Buchanan, PR did not refer you for the vacant position of Teacher, AD-1710, at Antilles Middle plaintiff School (MS), Virginia/New York/Puerto Rico School District, DDESS, Ft. Buchanan, PR, no official vacancy announcement number.
>
> (ii) On November 10, 2010, Ms. Maria Ortiz, Supervisory Management Services Specialist (SMSS), Virginia/New

---

statement is deemed admitted.

[11] As with SUMF ¶ 21, plaintiff admitted this statement insisting on his own qualifications (Docket No. 47 at ¶ 24). For that reason, the statement is deemed admitted.

> York/Puerto Rico School District, DDESS, Ft. Buchanan, PR, did not refer you for the vacant position of Teacher, AD-1710, at Antilles Middle School (MS), Virginia/New York/Puerto Rico School District, DDESS, Ft. Buchanan, PR, no official vacancy announcement number. SUMF at ¶ 27; see also, Docket No. 41, Exh. 12 at pp. 2 and 3 under "II. Claims" and "Accepted Claims."

Plaintiff had five (5) days from receipt of the letter to inform the agency if the claims had not been correctly identified, but he never alerted anybody of any incorrectly identified claim. SUMF at ¶¶ 28, 29. On November 9, 2012, the Administrative Judge appointed by the EOO found no discrimination. In turn, the Department of Defense adopted the decision and notified plaintiff (Docket No. 13, Exh. 1).

### IV. DISCUSSION

#### A. Failure to hire under Title VII

Title VII makes it unlawful for an employer to fail or refuse to hire any individual because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1). Absent direct evidence of discrimination, the action is governed by the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[12] To establish a *prima facie*, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he applied and was not hired; and (4) the

---

[12] There is no direct evidence of discrimination. Plaintiff testified during his deposition as follows:
> Q: So going back to this statement over at Paragraph 21 of the amended complaint, when you say that your attorney says for you that there is an unwritten policy at Antilles kindergarten elementary school not to hire males as classroom teachers, the basis for this statement is your observation of what is the prevailing case over at the school system?
> A: That is correct.
> Q: You have any other sort of information on which to base this?
> A: No. The fact that I don't see any males there, that's all they hire.
> Q: Has any school officer come to you and point blank has stated, "look, Samuel, we're not hiring male, male teachers for classroom positions?"
> A: No, no one has.

See, Docket No. 41, Exh. 13 at p. 76.

position was filled by a person possessing similar or inferior qualifications. Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010).

Should plaintiff establish a *prima facie* case, the burden of production shifts to the employer, who must articulate a legitimate, non-discriminatory reason for the challenged decision. See, Johnson v. University of Puerto Rico, 714 F.3d 48, 53-54 (1st Cir. 2013)(quoting Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010)).  If the employer articulates such a reason, plaintiff has to show by a preponderance of the evidence that the employer's proffered reason is pretextual.  See, Fontanillas-López v. Morel Bauza Cartagena & Dapena, LLC, 995 F.Supp.2d 21, 42 (D.P.R. 2014) (citing Johnson, 714 F.3d at 54 (internal citations omitted)).

### B. Plaintiff's *prima facie* case

Plaintiff has satisfied the first and third prongs of the *prima facie* case.  He is male, applied for the two 2010 vacancies, and was not chosen for either one of them.  But he was not qualified and cannot bypass the qualification baseline of those hired to occupy the positions he applied for in this case.

Qualification was predicated on creditable teaching experience, which plaintiff lacked.  What experience he possessed was in substitute work, which was not creditable.  See, Docket No. 53, Exh. 3 at p. 2 (including Section 3.b. of "The DoDDS Educator Applicant Evaluation Guide, which lists as non-creditable teaching experience for qualifying purposes, "substitute, practice or student teaching"); and Docket No. 53, Exh. 4 (including the "Memorandum for the record dated August 15, 2000" by Joseph D. Tafoya, Deputy Director of the DoDBA, which reiterates in Item 8 that "substitute work experience is not creditable towards teaching experience").

Plaintiff alleges that he has creditable teaching experience in DoDEA/DDESS, that is, eight (8) years of "full time teaching experience" in New York and since 1995, experience as a substitute

teacher at Antilles Elementary and Middle Schools (Docket No. 48 at p. 5). Even though he was employed by the Board of Education of New York, it is apparent that he served as a regular employee in a full time regular *substitute* teacher position, not in a permanent position. And the same is true with respect to his experience at Antilles School.[13]

Plaintiff argues that he was qualified, for he was included in a referral list in 2009 and thus, should have been considered automatically qualified thereafter. Id. at pp. 7 and 10.[14] The EAS worked on a "point in time" basis. A candidate could make it to the list if his background matched the competencies, knowledge, skills and abilities required for the position being filled, considering the pool of candidates available at that point, and no other. In that sense, 2009 does not equal 2010.

Finally, review of the hired candidates' credentials confirms that both Ms. López and Ms. Dixon had several years of experience as full time classroom teachers.[15] Because having experience as a full time teacher was one of the desired competencies for the 2010 vacancies,

---

[13] Plaintiff states that (i) Harmon did not see a reason as to why plaintiff would not appear on the referral lists; and (ii) Maldonado pointed out that a long-term substitute teacher has to go through the same process (as opposed to possessing the same qualifications) as a regular teacher to qualify for work, and that plaintiff has the same qualifications as Maldonado and, still, was not included on the referral lists. Given that review of the deposition excerpts plaintiff cites does not support what he asserts, they do not sustain the proposition for which they have been proffered. For all that, those opinions do not demonstrate an illegal reliance upon creditable experience as a decisional criterion in the hiring process. Mere disagreement with the employer's adoption of a job requirement does not evince prohibited discrimination. See, Krenik v. County of Le Sueur, 47 F.3d 953, 960 (8th Cir. 1995)(rejecting discrimination claim based in part on assertion that employer placed undue emphasis on certain skills or criteria rather than others).

[14] He further refers to some instance in 2009, in which he was not hired because the school bypassed the procedure for hiring in not calling him after two (2) other candidates declined the offer. No claim was timely asserted by any employment decision that may have taken place in 2009 or any other period aside from those identified by plaintiff before the EOO and in the Amended Complaint before this court. Events in 2009 are discrete acts of alleged discrimination, separate and actionable in themselves. See, Johnson, 714 F.3d at 53 (so considering "refusal to hire"). Insofar as they were never brought before the EOO within the period set in 42 U.S.C. § 2000e-5(e)(1), they are time barred. See, Castro-Medina v. Procter & Gamble Commercial Co., 565 F.Supp.2d 343, 372-373 (D.P.R. 2008) (rejecting failure to transfer claim as time barred, for discrete acts of discrimination are not actionable if time barred even when related to acts alleged in timely filed charges).

[15] Almost nine (9) years and eight (8) years of experience, respectively.

plaintiff cannot establish that the positions were filled by persons possessing similar or inferior qualifications. So he failed to make out a *prima facie* case.

### C. Employer's legitimate, non-discriminatory reason for the adverse employment action.

Assuming plaintiff made a *prima facie* case, which is clearly not the situation in this case, defendant has proffered a legitimate, non-discriminatory reason for its decision: plaintiff only possessed experience as a substitute teacher. On its face, the requirement is nothing but legitimate. See, Johnson, 714 F.3d at 54 (finding University of Puerto Rico's Ph.D. requirement facially reasonable and legitimate).

### D. Pretext

Plaintiff has not shown that the "creditable experience" requirement is pretextual. Pretext means something worse than business error. It means deceit – a lie – to cover one's tracks. Collazo-Rosado v. University of Puerto Rico, 765 F.3d 86, 97 (1st Cir. 2014); Ronda-Pérez v. Banco Bilbao Argentaria--Puerto Rico, 404 F.3d 42, 45 (1st Cir. 2005)(quoting Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000)). Its analysis is more demanding than the assessment of whether a *prima facie* case has been established. Mariani-Colón v. Department of Homeland Sec. ex. rel. Chertoff, 511 F.3d 216, 222 (1st Cir. 2007). It moves the inquiry to a new level of specificity. Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003). Hence, plaintiff must show that the employer did not honestly believe in the accuracy of the reason given for the action at issue. Adamson v. Walgreens Co., 750 F.3d 73, 79 (1st Cir. 2014).

A party may demonstrate pretext through several methods. Depending on the case, these include a showing that the employer's explanation is implausible or incoherent, or that the employer has proffered different and arguably inconsistent explanations for its decision, unless the record reveals that the real motive was an unstated reason that is nondiscriminatory, Collazo-

Rosado, 765 F.3d at 93; pointing out to probative discriminatory comments, González v. El Día, Inc., 304 F.3d 63, 69-72 (1st Cir. 2002); and evidencing that the employer has treated similarly situated individuals differently. Koseris, 331 F.3d at 213.

Plaintiff challenges defendant's explanation, referring to an incident in which Ms. Dixon – the applicant chosen to fill the August 2010 vacancy - allegedly stated that she had no previous experience teaching fifth grade (Docket No. 47 at ¶ 24). But that will not do. Plaintiff does not know Dixon's background information, a critical flaw in attempting to successfully oppose summary judgment. See, Rathbun v. Autozone, Inc., 361 F.3d 62, 79 (1st Cir. 2004)(refusing to accord any weight in summary judgment calculus to statement addressing a matter about which plaintiff lacked or not demonstrated personal knowledge); Pérez v. Volvo Car Corp., 247 F.3d 303, 315-316 (1st Cir. 2001)(explaining that to be admissible in the context of a motion for summary judgment, statement must be based on personal knowledge, not on information and belief, and must concern facts as opposed to conclusions, assumptions or surmise).

Nor did plaintiff show that notwithstanding defendant's knowledge of Dixon's lack of creditable experience - if that is what it was - it selected Dixon for the position. In a disparate treatment case, more must be shown than that the employer made a mistaken or unwise personnel decision in selecting "X" rather than "Y." Rathbun, 361 F.3d at 74. In that sense, plaintiff cannot say that Dixon was not required to go through the same application process he went through before being offered the job plaintiff sought. See, Rea v. Martin Marietta Corp., 29 F.3d 1450, 1459 (10th Cir. 1994)(applying principle in context of ranking while dismissing age discrimination claim)(citing McDonald v. Santa Fe, 427 U.S. 273, 283 (1976), to the effect that Title VII is not violated if employer's procedures similarly applied to members of all races).

In consequence, there is no evidence that individuals similarly situated to plaintiff were treated differently. No triable issue has been established about defendant's honesty under Fed.R.Civ.P.56. See, Wallace v. O.C. Tanner Recognition, Co., 299 F.3d 96, 101-102 (1st Cir. 2002)(summary judgment where plaintiff failed to generate genuine dispute about honesty of employer's belief); Collazo-Rosado 765 F.3d at 95 (summary judgment based on absence of a triable issue of fact on pretext question).

## V. CONCLUSION

Plaintiff strongly believes that his experience as a substitute teacher should be creditable teaching experience for qualifying purposes given his "innumerable" hours, days, weeks and months of substituting. That belief takes him only so far. The employee's perception of himself is not relevant. Torrech-Hernández v. General Elec. Co., 519 F.3d 41, 49 (1st Cir. 2008); Navedo v. Nalco Chemical, Inc., 848 F.Supp.2d 171, 193 (D.P.R. 2012). In the end, courts may not sit as super personnel departments, assessing the merits–or even the rationality–of employers' nondiscriminatory decisions. See, Johnson, 714 F.3d at 55 (quoting, Mesnick, 950 F.2d at 825). Because there was no showing that defendant acted on account of plaintiff's membership in a protected group, defendant's motion for summary judgment (Docket No. 41) must be GRANTED and the case DISMISSED.

Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of January, 2016.

                                            s/Pedro A. Delgado-Hernández
                                            PEDRO A. DELGADO HERNANDEZ
                                            U.S. DISTRICT JUDGE